## IN THE UNITED STATES DISTRICT COURT FOR
## THE MIDDLE DISTRICT OF FLORIDA
## TAMPA DIVISION

MARYLAND  MEDIA  SOLUTIONS  LLC
d/b/a VALPAK OF MARYLAND,

        Plaintiff,

v.                                      Case No. 26-cv-00574

VALPAK DIRECT MARKETING SYSTEMS, LLC,

        Defendant.

_____/

## <u>COMPLAINT</u>

Plaintiff, MARYLAND  MEDIA  SOLUTIONS  LLC  d/b/a  VALPAK  OF MARYLAND ("VPMD"), by and through its undersigned counsel and in accordance with Rule 8 of the Federal Rules of Civil Procedure, hereby files this Complaint against Defendant, VALPAK DIRECT MARKETING SYSTEMS, LLC ("Defendant," "Company," or "Valpak"), and alleges as follows:

### <u>JURISDICTION, VENUE, AND PARTIES</u>

1.     This is an action for declaratory relief pursuant to Chapter 86 of the Florida Statutes, injunctive relief, and other causes of action seeking damages in excess of $50,000.00, excluding attorneys' fees, interest, and costs.

2.     Venue is proper in the Middle District of Florida, Tampa Division, pursuant to the Parties' forum-selection clause requiring that any action arising out of the Agreement be brought in Tampa, Florida. *See* Exhibit A, *infra*, § 15.7.

3.     Plaintiff, VPMD, is a Maryland Limited Liability Company, with its principal place of business in Leesburg, Virgina.

4.     Defendant, Valpak Direct Marketing Systems, LLC, is a Delaware Limited Liability Company with its principal business address located at 1 Valpak Ave., St. Petersburg, Florida 33716.

5.     This Court has subject matter jurisdiction under 28 U.S.C. § 1332(a)(1) because complete diversity exists between VPMD, as Plaintiff, and Company, as Defendant, and the amount in controversy exceeds $75,000.00.

## VALPAK'S BUSINESS MODEL BACKGROUND

6.     Valpak is the franchisor. It is the successor to Valpak Direct Marketing Systems, Inc., which was converted to a Delaware limited liability company in fiscal year 2021.

7.     Beginning in 1986, the Company began offering cooperative direct mail advertising franchises that would be independently owned and operated by franchisees.  Years later, the Company created a subsidiary, Valpak Franchise Operations ("VPFO") to own and operate Valpak franchises (an "O&O"). VPFO's

principal business address is 1 Valpak Avenue North, St. Petersburg, Florida 33716. VPFO has operated Owned Market Businesses since 2014.[1]

8.      Valpak's primary business is printing, publishing, and distributing cooperative direct mail advertising. "Cooperative direct mail advertising" is a method of advertising in which advertisements from multiple businesses are included in a single envelope or package for mailing, allowing the costs of the mailing to be spread among the businesses. Valpak's principal advertising medium is the "VALPAK® Envelope." VALPAK® Envelopes are envelopes, identified by the "VALPAK®" trademark and/or other trademarks, service marks, trade names, and logos owned by Valpak ("Marks"), which contain Advertising Inserts, and which are assembled, addressed, and prepared for publication and direct mailing by Valpak primarily to residential addresses. An "Advertising Insert" is an individual piece of advertising or promotional material, such as a coupon, which is included in a VALPAK® Envelope in accordance with the VALPAK® System, described below. Mailings are made to postal carrier routes or other designated areas in a manner that qualifies for third class bulk mail postage rates. In addition, the Company and Franchisees engage in electronic

---

[1] All capitalized terms referenced and not otherwise expressly defined herein shall be given the same meaning and application as that set forth in the applicable Franchise Agreement or the Intermarket Sales Policy.

advertising that currently offer digital coupons, and have offered prepaid certificates, for goods and services offered by local businesses.

9. The Company has developed methods, formats, specifications, standards, operating policies and procedures for use in the offer and sale of advertising and other promotional materials in VALPAK® Envelopes and the publication and distribution by Valpak of VALPAK® Envelopes (the "VALPAK® System"). It is the function of the VALPAK® System that the franchisees have the exclusive right to within their Territory.

10. Company has a competitive advantage over many competitors because of the name recognition associated with the VALPAK® name and Marks. The VALPAK® System is a major component of that competitive advantage due to its unique union of sales, production, distribution and billing processes afforded exclusively to Franchisees. The VALPAK® System contains Valpak Franchisee Confidential Information.  Franchise Confidential Information includes all client contact and sales prospecting information, as well as data containing pricing, proposals, distributions, NTA selection and sales contracts. All this information is proprietary and unique to Franchisees and resides on Company's computer systems, the VALPAK® System, or otherwise, both past, present and future. Also, Franchisee employee information, including but not limited to data and commissions, are deemed to be considered Franchisee Confidential Information.

Protecting Franchisee Confidential Information is critical to Franchisee's ability to run a successful business. The Franchise Agreements contains significant limitations on the use of the VALPAK® System which are intended to protect this competitive advantage and prevent competitive business from having access to it.

### CLIPP/AMATOMARTIN

11.     Clipper Media Holdings Inc. ("Clipper MH") is a private equity investment vehicle sponsored by AmatoMartin, a privately-owned private equity investment company with its principal business address located at 139 Cooper Avenue, Montclair, New Jersey 07043.

12.     Clipper MH is also the ultimate parent of Clipper Magazine, LLC ("Clipper Mag"), which owns and operates Clipper Magazine, a local, regional, and national direct-mail advertising company.

13.     In the fall of 2022, Clipper MH purchased its interest in the Company making it the ultimate parent company of Valpak.

14.     Clipper MAI is a subsidiary of Clipper MH.

15.     Clipper MAI has the same principal business address as Valpak (Clipper MH and Clipper MAI shall be referred to as "Clipp").

16.     Clipp is in the business of printing, publishing, and distributing cooperative direct mail advertising generally in the format of a magazine containing advertising and offers for local businesses. In some instances, Clipp has

a packet with advertising inserts, operating much like the Valpak blue envelope. In addition, it engages in electronic advertising and the offer of prepaid certificates, as well as digital coupons, for goods and services for local businesses. Clipp products are in direct competition with Valpak products offered by Franchisees.

## GENERAL ALLEGATIONS

17.    On or about January 30, 2015, VPMD entered into a renewed Franchise Agreement with Company. A copy of the renewed Franchise Agreement is attached hereto as **Exhibit "A"**.

18.    The Franchisee Plaintiff is engaged in the business of publishing and distributing, by direct mail and on-line, promotional literature and packages known as VALPAK Envelopes, and promoting and selling advertising services associated with the Marks and advertising in promotional literature and VALPAK Envelopes. Similar advertising services exist online at Valpak.com.

19.    The Company offers both independent Franchisees and O&O Franchises (which are owned by the Company) the exclusive rights to use Valpak's methods, formats, systems, specifications, standards, operating policies and procedures and Marks to offer and sell, in various designated geographic areas, advertising services associated with the Marks and advertising in promotional literature and VALPAK® Envelopes to be distributed within such designated

6

geographic areas, and in Electronic Advertising for placement on VALPAK® Sites or otherwise distributed through electronic medium, and to engage in certain types of Intermarket Advertising in accordance with Defendant's Intermarket Sales Policy.  A copy of the Intermarket Sales Policy ("ISP") is attached hereto as **Exhibit "B"**.

**THE FRANCHISE AGREEMENT**

20.    Plaintiff VPMD has exclusive rights to operate the Franchised business in the Territory defined in Exhibit A of the Franchise Agreement as:

> The County of Montgomery with the following exceptions: a portion of Zip Code 20903 (currently designated as CR 2, 2 and 5) and a portion of Zip Code 20912 in the state of Maryland.
>
> Zip Code 20012 and partial Zip Codes 20015 and 20016, each from the Maryland border to Tenley/Nebraska Avenue, N.W., in the District of Columbia.

*See* Exhibit A.

21.    Section 3 of the Franchise Agreement provides:

> **3.    GRANT OF FRANCHISE.**
>
> **3.1 <u>Grant</u>**. Subject to, and in accordance with, the remainder of this Section, COMPANY grants to FRANCHISEE, and FRANCHISEE accepts from COMPANY, a right, license and obligation:
>
> (a) to sell, and place orders for distribution of advertising, Advertising Inserts, or other products and/or services offered by COMPANY, to be placed in VALPAK® Envelopes to be distributed within the Territory, to: (i) any

Advertiser which maintains a physical place of business within the Territory; or (ii) a Purchasing Representative with an office located within FRANCHISEE'S Territory;

(b) to sell Electronic Advertising to: (i) any Advertiser which maintains a physical place of business within the Territory; or (ii) a Purchasing Representative with an office located within the Territory;

(c) to sell, and place orders for distribution of advertising, or other products offered by COMPANY, or Advertising Inserts to be placed in VALPAK® Envelopes or in the form of Electronic Advertising to be distributed outside of the Territory as Intermarket Advertising so long as: (i) the Advertiser from which the FRANCHISEE is soliciting business maintains a Purchasing Representative with an office located within the FRANCHISEE 's Territory; or (ii) FRANCHISEE has first obtained written consent from the FRANCHISEE in whose territory the Purchasing Representative is located, or from COMPANY if the Purchasing Representative is located in an area that has not been granted to another FRANCHISEE; and

(d) to use the Marks in connection with the foregoing activities in accordance with the VALPAK® System.

22.     When read in its entirety, Section 3.1 clearly grants VPMD the exclusive right and corresponding obligation to operate the franchised business within its defined Territory.

23.     Section 3.3 of the Franchise Agreement expressly provides as follows with respect to Defendant's Reserved Rights as to VPMD:

**3.3 COMPANY Reserved Rights.** COMPANY reserves the right, among others, in its sole judgment and without granting any right to FRANCHISEE other than those identified in Sections 3.1, 3.2 and 3.6 to: (a) operate and grant to others the

license to operate businesses, including, without limitation, a business in accordance with the VALPAK® System, outside the Territory, on such terms and conditions as the COMPANY deems appropriate; (b) engage in the offer and sale of any advertising services and products and/or engage in the publication and/or distribution of any advertising or promotional materials within the Territory, but only if FRANCHISEE, or its Owners or affiliates, are engaged in a Competitive Business with the COMPANY's consent as may be permitted pursuant to and in accordance with this Agreement; (c) identify itself (and its affiliates) by its corporate name in connection with any activity within the Territory, provided that such activity does not adversely affect the reputation and goodwill of the VALPAK® System; (d) use any of the Marks within the Territory in connection with the promotion of the VALPAK® System or any aspect of the VALPAK® System; (e) solicit and sell, directly by National Sales, advertising products and services for distribution in the Territory using the Marks subject to the terms and conditions of the Intermarket Sales Policy; and (f) engage in any activity: (i) that the COMPANY is not otherwise expressly prohibited from engaging in by the terms and conditions of this Agreement or the Intermarket Sales Policy; and/or (ii) that is not exclusively granted to FRANCHISEE pursuant to Sections 3.1, 3.2 and 3.6 of this Agreement (anything not expressly granted by COMPANY to FRANCHISEE is reserved by COMPANY); and/or (iii) that has been offered to FRANCHISEE on terms and conditions generally available to other Franchisees but for which FRANCHISEE has chosen not to participate on such terms.

24.     Sections 3.4 and 3.5 of the Franchise Agreement provide as follows:

**3.4 Limitations**. The Franchise granted by this Agreement does not include any right on the part of FRANCHISEE to itself print, publish or distribute VALPAK® Envelopes or Advertising Inserts bearing the Marks or to cause any third party to do any of the foregoing, or to use the Marks other than in connection with the offer, sale and promotion of advertising in VALPAK® Envelopes in accordance with the VALPAK®

System, and FRANCHISEE is expressly prohibited from engaging in any of such activities.

**3.5 Best Efforts**. During the Term, FRANCHISEE shall at all times: (a) faithfully, honestly and diligently perform its obligations hereunder; and (b) continuously exert FRANCHISEE's best efforts to: (i) promote and enhance the VALPAK® System; and (ii) the sale of Advertising Inserts, Electronic Advertising and all other products and services COMPANY authorizes FRANCHISEE to sell, in the Territory.

## DEFENDANT'S IMPROPER INTRODUCTION OF CLIPP INTO VALPAK® SYSTEM

25.     The Company generates revenues primarily through the printing and distribution of coupons, flyers, and other promotional materials (sometimes referred to as "Inserts") as well as through the offering of digital advertising products. Printed products are marketed through a network of franchises through the United States. A franchise agreement is executed with Franchisee, which establishes general terms and conditions for sales and distribution of Valpak printed materials within the designated territory, as well as the terms for sales/distributions within different territories and by the internet.

26.     AmatoMartin, a privately held investment company, through its Clipp companies, acquired the Company on November 28, 2023, and immediately began using the VALPAK® System to facilitate its business in not only Plaintiff's exclusive Valpak® Territory, but others as well.

27.    AmatoMartin owns, without limitation, advertising companies Local Flavor, Home & Décor, DAL, Clipp and Prestigious Living, used individually herein or collectively known as "Clipp products".

28.    Clipp, and Clipp products, are a "Competitive Business" which prohibits Clipp and the Company from using the VALPAK® System to produce, insert and mail such items.

### Franchisee Confidential Information

29.    VPMD's Franchise Agreement defines Confidential Information as "all information contained in the Operating Procedures, as well as all information relating to the **VALPAK® System**" including "prices charged by VALPAK® Franchisees for intermarket; … sales and recruiting techniques; and (l) customer lists, proprietary maps and mapping, and demographic studies".

30.    All information included in the definition of Confidential Information is included in the definition of the "**VALPAK® System**" which means (1) the methods, formats, systems, specifications, standards, and operating policies and procedures established by COMPANY from time to time for use in the offer and sale of advertising in VALPAK® Envelopes and such other advertising products as COMPANY may offer to its Franchisees from time to time, and the Production and distribution of VALPAK® Envelopes (and such other products, if any), by

COMPANY; and (2) the methods of operation of, and benefits from, and features associated with, participation in the network of Franchisees.

31.    Under Plaintiff's Franchise Agreement, "**FRANCHISEE Confidential Information**" means "all information specific to FRANCHISEE, and identified as FRANCHISEE, relating to: (a) financial information or data concerning such FRANCHISEE, (b) Customer list and information, and (c) financial information or data concerning Competitive Businesses operated by such FRANCHISEE".

32.    Section 8.1(c) of VPMD's Franchise Agreement provides that "FRANCHISEE Confidential Information is made available to COMPANY by FRANCHISEE solely on the condition that COMPANY agrees . . . that COMPANY: (I) will not use the FRANCHISEE Confidential Information in any other business or capacity; (2) will adopt and implement all reasonable procedures prescribed from time to time by COMPANY to prevent unauthorized use or disclosure".

33.    Plaintiff's employees input such business information and data into the **VALPAK® System** on a daily basis and have done so since the date of the original Franchise Agreement up to the present time.  Such information is too voluminous for Plaintiff to specifically identify and is already in the possession of Defendant.

34.    The sections of the Franchise Agreement cited above and the reasonable expectation of the Plaintiff that the Defendant would protect its trade secrets and not use such information and data in any other business or capacity, including a

Competitive Business such as Clipp is well founded in the cited provisions of the Franchise Agreement and the reasonable expectations of Plaintiff.

35.  Based on foregoing, Plaintiff has rights to its Confidential and Financial Information.

## Company's Improper Grant of Access to VALPAK® System and Confidential Information

36.  Since Clipp's acquisition of the Company, it has been integrating Clipp products into the system and granting Clipp's access to the system, thereby exposing Plaintiff's Confidential and Financial Information to Clipp representatives who are competitors.

37.  As testified to by the Company's Chief Financial Officer, Matt Biasini, the Company utilizes multiple operational platforms, including VP Office, SAP, and Salesforce, which feed data into MicroStrategy. MicroStrategy is the data "mothership" that sits on top of various IT platforms. It is a business data warehouse administrative tool.

38.  Information from VP Office, SAP, and Salesforce is fed into MicroStrategy. Through this structure, Clipp personnel are able to identify VALPAK® franchise customers, review associated account information and activity tied to unique customer identifiers/IDs, and leverage that information in ways that interfere with Plaintiff's customer relationships and competitive position.

39. By way of example on access to the system, in late June/early July of 2024, the Company merged Clipp and Valpak into one Sales Force Account which is then accessible to Clipp representatives, the Company, and Valpak Franchisees. Representatives of Clipp can also access VP Office which gives access to operational aspects of Valpak Franchisees, including Plaintiff. Similarly, representatives of Valpak can access operational details of Clipp through the VALPAK® System.

40. Data and information from VP Office, SAP, and Salesforce is fed into MicroStrategy. Clipp representatives have the ability to look up existing Valpak customers through unique IDs assigned and procure or interfere with Valpak potential leads. Clipp representatives can also access Franchisees, including Plaintiff, postage expenditures. Access to the VALPAK® System, allows Clipp representatives to analyze the business practices and operations of Valpak Franchisees, including Plaintiffs, to go after Valpak customers and under-cut the prices that Plaintiff and other Valpak Franchisees charge their customers.

41. Because Clipp has unauthorized access to the VALPAK® System, it also has access to Valpak Franchisee Confidential and Financial Information. Emails are being sent out that include both Valpak and Clipp logos. This is also causing confusion among customers. For a period of time, paid leads from a Valpak

campaign funded by the Franchise Association are being assigned to Clipp representatives, creating further confusion among both employees and clients.

### Use of Confidential Information and Sale of Competitive Products

42. Clipp and the Company, pursuant to Section 3.3(b) of the Franchise Agreement, are prohibited from using the VALPAK® System to print, insert and mail any competitive products within the Plaintiff's Territory. Clipp is equally prohibited from accessing any Franchisee Confidential Information by any means, as they are not authorized under the Franchise Agreement to do so. Clipp's actions through the Company are pervasive, ongoing, and causing damage daily to the entire Valpak® Network.

43. After its acquisition, the Company, at the behest of its new owner, Clipp, immediately began to integrate the Clipp products into the VALPAK® System—in violation of the Franchise Agreement and Plaintiff's rights—which, when completed, will allow Clipp to automate the order, billing, and customer service information. The Company allowing Clipp access to the VALPAK® System also infringes on the rights and security of the existing franchisee and allows access to Confidential Valpak Franchisee Information. Despite this, Clipp started integrating their products into the O&O Franchisees. Access to the VALPAK® System not only enhances its competitiveness in the marketing of its products in general but specifically within the Plaintiff's Territory.

44. Worse yet, Clipp sales representatives are intentionally misrepresenting to VPMD's (and other franchisees) customers that Valpak is now owned by Clipp. Clipp representatives are further misrepresenting that both companies (Valpak and Clipp) are "working together" and that the representative can give the customer exposure to more areas.

45. Chris Cate and Matt Biasini are the President and Chief Financial Officer of Valpak, respectively. Following Clipp's acquisition of the Company, both assumed the same executive roles within Clipp, a direct competitor. Their service as executive officers of both Valpak and Clipp has occurred during the period in which the VALPAK® System and other platforms were being integrated and shared data environments were being consolidated. In these roles, Chris Cate and Matt Biasini can equally access data and information of both Valpak and Clipp systems.

46. This is especially damaging, as VPMD services 520,000 homes.

47. With the occasional customer that uses both Valpak and Clipp, Clipp is sending out bills to VPMD (and other franchisees) customers, with both the Valpak and Clipp logos. These customers are annoyed. Annoyed customers sometimes take their business elsewhere. Customers are complaining to VPMD that they are being double billed. This just goes to show the confusion intentionally created by Clipp representatives within the Plaintiff's Territory.

48. From the VALPAK® System, Clipp also knows VPMD's mailing dates and has worked to deliver just prior to these dates.

49. Further, a Clipp representative intentionally and wrongfully approached a VPMD customer about new products. She then misrepresented that "[a]t Valpak & Clipp, we remain committed to the success of your business by bringing constant innovation." She signed the email as media Consultant "valpak.com/advertise" and "advertise.clipp.com". A true and correct copy of the email thread is attached hereto as **Compositive Exhibit "C"**. These fraudulent representations cause confusion, dilute the Valpak brand and intentionally mislead customers and prospective customers within the Plaintiff's Territory. Valpak is permitting Clipp to compete with VPMD (and other franchisees), in its exclusive Territory, using the VALPAK® System, which contains both Confidential Information and Financial Information of the Plaintiff.

50. Clipp's access to the VALPAK® System is not limited to its relationship with Company. Clipp is now able to use the VALPAK® System and the Confidential and/or Financial Information and competitive advantage in other future businesses that Clipper Media Holdings may acquire or develop in competition with Franchisees in its Valpak Territory. The Franchise Agreement prohibits the Company from using the VPOFFICE System to produce Clipper Magazine and related Clipp products.

51. With access to the VALPAK® System and/or information fed from VPOffice into MicroStrategy, representatives of Clipp have the ability to look up existing Valpak customers through unique IDs assigned and procure or interfere with Valpak potential leads.

52. Valpak requires franchisees to operate the businesses under the VALPAK® System under its standard franchise agreement, the Valpak.com, insidevalpak.com program and the VPOFFICE Software License Agreement (the "VPOFFICE Agreement") (collectively, the "Franchise Agreement"). All Franchisees must use the VPOffice Software solely for internal business purposes for direct mail ads and Valpak.com offers, related to the franchised business carried on by Franchisee pursuant to the Franchise Agreement. Recently, the Company has permitted Clipp.com deals to be placed on the Valpak.com site in independent Franchisee markets, including Plaintiff's Territory, establishing yet another breach of the Franchise Agreement.

53. The "Valpak® System" generally means (1) the methods, formats, systems, specifications, standards, and operating policies and procedures established by COMPANY from time to time for use in the offer and sale of advertising in VALPAK® Envelopes **(and such other products, if any)**, by COMPANY; and (2) the methods of operation of, and benefits from, and features associated with, participation in the network of Franchisees. (Emphasis added).

Essentially, it includes all elements necessary to get the products produced and mailed. Franchisees also are required to purchase Valpak.com to receive certain pricing advantages. A franchisee that does not purchase Valpak.com must pay a minimum fee to the Company.

54. Section 3.1 of Plaintiff's Franchise Agreement grants the FRANCHISEE the **exclusive rights** to use the **VALPAK® System** to sell, order and distribute advertising products in the **Territory** of the **Franchisee** and outside the Territory as Intermarket Sales or electronic advertising.

55. Section 3.3 of Plaintiff's Franchise Agreement provides that the Company reserves to itself <u>and its affiliates</u> the rights, among others, in its sole judgment; to (a) operate and grant to others the license to operate businesses, including, without limitation, **a business in accordance with the VALPAK® System, outside the Territory**, on such terms and conditions as the COMPANY deems appropriate; (b) **engage in the offer and sale of any advertising services and products and/or engage in the publication and/or distribution of any advertising or promotional materials within the Territory, by direct mail or otherwise <u>that do not use</u> the Marks or the VALPAK® System.** (Emphasis added).

56. Here, the Company is permitting Clipp to use the Marks and VALPAK® System in violation of the terms of the Franchise Agreement. In doing

so, the Company is acting outside the scope of, and contrary to, any purported reserved rights.

57.    Section 3.3 (f) of VPMD's Franchise Agreement states, Company may "engage in any activity: (i) that the COMPANY is not otherwise expressly prohibited from engaging in by the terms and conditions of this Agreement or the Intermarket Sales Policy; and/or (ii) that is not exclusively granted to FRANCHISEE pursuant to Sections 3.1, 3.2 and 3.6 of this Agreement (anything not expressly granted by COMPANY to FRANCHISEE is reserved by COMPANY); and/or (iii) that has been offered to FRANCHISEE on terms and conditions generally available to other Franchisees but for which FRANCHISEE has chosen not to participate on such terms."

58.    By acting contrary to its purported reserved rights and in violation of Section 3.3(b), the Company is expressly prohibited from engaging in actions with Clipp.

59.    Clipp and the Company argue that Clipp is allowed to use the VALPAK® System.  It intends to accomplish this by executing an "Authorization Agreement," which has not been finalized. Franchisee Plaintiff and the Company's respective rights and obligations are governed by the Franchisee Agreement, which provide, *inter alia*, that any use of the VALPAK® System by affiliates, including Clipp MAI, requires prior consent from the Franchisee Plaintiffs.

60.    The Company's only potential rationale for authorization of Clipp's use of the VALPAK® System and the attempted circumvention of the terms of the Franchise Agreement through use of the proposed Authorization Agreement is flawed under the Franchise Agreement and Parties' course of dealing for the following reasons:

a.    First, if subsection (iii) can be interpreted in this manner, it would directly contradict the preceding subsections of 3.3;

b.    Second, this interpretation would create ambiguity with the Grant of Franchise outlined in sections 3.1, 3.2, 3.5, and 3.6. If the court should agree that it creates an ambiguity, then the Company President, company General Counsel and VFA General Counsel who negotiated this clause will be available to testify that his interpretation is not correct and the whole Section 3.6 was designed to not allow the Company to engage in competitive activities without Franchisee consent;

c.    Third, Clipper MAI and the Company have stated that the Clipp products are not part of the Valpak Franchise and are not subject to the Franchise Agreement or the ISP. Clipp products are a "Competitive Business" and as such, are subject to the Franchise Agreement;

   d.  Fourth, Clipper MAI's interpretation constitutes a violation of the duty of good faith and fair dealing, as it seeks to take away specific territorial rights granted in sections 3.1, 3.2, and 3.6. This is further aggravated by the fact that if a Franchisee does not agree to market the Clipp products, then Clipp will come into the Territory and market them itself. This is not only a competitive product, but also allows an Affiliate (if one) to dilute the Valpak brand;

   e.  Fifth, Clipp has offered Valpak Franchisees an opportunity to sell Clipp products in return for Valpak Franchisees promise to amend certain provisions of their Franchise Agreements relating to their significant exclusive rights in their territories. Valpak Franchisees have a right to reject such an offer without consequence; and

   f.  For the sake of clarity, it is not necessary that Clipp has access to the VALPAK® System in order to allow Valpak Franchisees to sell Clipp products. All that is required is for the Franchisees to have access to the VALPAK® System.

61.    Clipper, as owner of Defendant, has a conflict of interest in allowing its independent and competitive company access to the VALPAK® System.

62.    This conflict is especially egregious because it is not necessary to allow Clipp complete access to and unrestricted use of the VALPAK® System to

allow Plaintiff and all other Franchisees to market Clipp's existing products within their respective Territories. Clipp is gaining access to the Franchisee Plaintiff's proprietary system and the Confidential Information it contains to compete with them. The Independent Franchisees receive no protection from Clipp competition using the advantages of the VALPAK® System within their respective territories or future competitive business acquired by Clipp for its intrusion into the VALPAK® System. Clipp should be required to enter into a separate voluntary agreement with the independent Franchisees for the marketing of Clipp's products in the exclusive territories for those Franchisees willing to do so.

63.    Moreover, the Franchise Agreement language cited above effectively limits the Company from using the VALPAK® System to sell advertising products either in or out of the Territories of its Franchises.  Clipper Magazine should not be able to use the VALPAK® System in general or the VPOFFICE Software to sell or order its magazine products as desired no matter where they are marketed.

64.    In sum, the Company is permitting access to the VALPAK® System to aid in the success of a competitive business (Clipp), while also permitting access to Confidential and Financial Information in the VALPAK® System for Clipp to compete in the exclusive Territory.  In addition, where existing Valpak Franchisees have Territories where Clipp had previously marketed their magazine, they may have additional complaints related to lost revenue and brand dilution.

## COUNT I
## DECLARATORY JUDGMENT
### (VPMD v. Defendant)

65.    VPMD restates and incorporates paragraphs 1-64, above, as if set forth in full herein.

66.    VPMD contends that the Company is not allowed to market and sell Clipp products in its protected territory without its consent.

67.    Clipp contends it is an affiliate. VPMD disputes this contention as Clipp is a separate legal entity that actually competes against Valpak.

68.    VPMD contends that the Company is not allowed to grant Clipp, a competitor, full unrestricted access to the VALPAK® System. VPMD further contends that the Company has improperly granted Clipp unrestricted access to VPMD's Confidential and Financial Information, and that Clipp is using Confidential and Financial Information to its competitive advantage and to the detriment of VPMD.

69.    Defendant contends that the Clipp products are somehow not part Valpak and not subject to the Franchise Agreement but nonetheless authorized to use the VALPAK® System.

70.    There is a bona fide, actual dispute regarding whether the Company is allowed to have Clipp access the VALPAK® System.

71.     There is a bona fide dispute as to the Franchisee obligation (which is denied) to carry Clipp products.

72.     The declaration sought herein pertains to a current, ascertainable set of facts or present controversy as to a state of facts.

73.     Some immunity, power, privilege or rights of the Parties are dependent upon the facts or law applicable to those facts.

74.     The Parties' antagonistic and adverse interests are before the Court on proper process.

75.     The declaration sought is not merely the giving of legal advice or the answer to questions propounded from curiosity.

76.     This is an action to determine the Parties' rights and to temporarily and permanently enjoin the implementation and distribution of Clipp products as Defendant contends.

77.     The foregoing actions of Defendant violate Franchisee Plaintiff VPMD's rights under the Franchise Agreement and adversely affect the rights of VPMD.

78.     Defendant's unilateral implementation and distribution of the Clipper products, without an applicable reservation of rights, has caused, and will continue to cause, irreparable injury to VPMD, unless enjoined by the Court.

79.     VPMD does not have an adequate remedy at law.

80.   VPMD has a substantial likelihood of success on the merits. Defendant's actions in unilaterally permitting Clipp to use the VALPAK® System independently from the Franchisee and the separate issue of forcing Franchisee to accept loss of its rights under the Franchise Agreement in order to market Clipp products in its Territory without obtaining the requisite consent or authorization of the Franchisee Plaintiff are contrary to, and a clear violation of, the Terms of the Franchisee Agreement.

81.   Injunctive relief will serve the public interest in that it will discourage unfair competition of a Franchisor with its respective Franchisees and encourage the Parties to honor the terms and obligations of their written agreements.

82.   The requested remedy in equity is also warranted upon consideration of the balance of hardships between VPMD, if Clipp products are permitted to continue to be distributed, and that of Defendant.

83.   VPMD has retained the undersigned law firm to represent them in this action and has incurred an obligation to pay said law firm a reasonable fee for its services. VPMD is entitled to an award of its reasonable attorneys' fees and costs should they be the prevailing party in this action pursuant to the terms of the Current Franchise Agreement.

84.   All conditions precedent to the bringing of this action have occurred or been waived.

WHEREFORE, Plaintiff, MARYLAND MEDIA SOLUTIONS LLC d/b/a VALPAK OF MARYLAND, respectfully requests that this Court enter Judgment in its favor and against Defendant, VALPAK DIRECT MARKETING SYSTEMS, LLC, as follows:

a. Declaring that Defendant is not allowed to market and sell Clipp products in VPMD's protected territories;

b. Declaring that Defendant cannot integrate the Clipp products into the VALPAK® System;

c. Declaring that Defendant cannot allow Clipp to access to or use of the VALPAK® System or information directly from the Valpak System, which is fed into other applications accessible by Clipp;

d. Declaring that Defendant cannot allow Clipp access to VPMD's Confidential and Financial Information;

e. Awarding attorneys' fees and costs pursuant to the Franchise Agreement; and

f. Awarding all such other and further relief as the Court deems just and proper.

## COUNT II
## BREACH OF CONTRACT
### (VPMD v. Defendant)

85.    VPMD restates and incorporates paragraphs 1-64, above, as if set forth in full herein.

86.    The Franchise Agreement constitutes a binding and enforceable contract between VPMD and Defendant.

87.    Under Section 3.3(b) of the Franchise Agreement, Defendant reserved the right to sell products within a Franchisee's Territory by direct mail *if the product does not:* (1) use the Marks; *or* (2) use the VALPAK® System (which refers to the production and distribution of Val-Pak Envelopes (and such other products)); *or* (3) is not included in the VALPAK® Envelope. *See* Exhibit A.

88.    To the extent that Section 3.3(b) is ambiguous as to its meaning and interpretation, VALPAK® also has a Franchise Disclosure Document ("FDD") that explains the Parties' intent with regard to the Current Franchise Agreement and ISP. Under item 16 of the FDD, entitled "Restrictions on What the Franchisee May Sell," it expressly states that the Franchisees "are not required or obligated to offer or sell any goods or services which VALPAK® may authorize in the future, other than advertising Inserts to be placed in VALPAK® Envelopes or electronic advertising."

89. The Company has permitted Clipp to use the VALPAK® System and the Marks for distribution of Clipp products which are prohibited by the Franchise Agreement.

90. By way of example, the Company has allowed Clipp to directly target and market within VPMD's exclusive Territory, as evidenced by the emails attached as Composite Exhibit C.

91. The Company is permitting Clipp to use the Confidential and Financial Information of VPMD to its competitive advantage and to the detriment of VPMD.

92. Because Defendant is permitting a competitive business, Clipp, to use the VALPAK® System, the Company is **not** acting within its reserved right.

93. Absent a reserved right, the Company is engaging in a prohibited activity and is breaching the Franchise Agreement.

94. Defendant is wrongfully competing with, and infringing upon the rights of, VPMD by allowing Clipp to use the VALPAK® System, thereby further breaching, and continuing to breach, the Franchise Agreement, and diluting VPMD's brand.

95. The Company has taken the position that if something is not specifically prohibited, then it is a reserved right under Section 3.3(f) of the Franchise Agreement and the Company is free to undertake that activity. Nothing

is further from the truth. Section 3.3(f) provides no standards or guidance to reserved rights. As such, under Florida law, a covenant of good faith and fair dealing applies to that clause. The Company is breaching the covenant of good faith and fair dealing by competing against its independent franchisees in their exclusive Territories.

96.    Additionally, Defendant's actions and position regarding Section 3.3(f) of the Franchise Agreement—that Defendant allegedly reserved the right to allow a competitor access to the VALPAK® System (and VPMD's Confidential and Financial Information) and to sell a competing product in VPMD's Territory, at its sole discretion and without any limitations or standards—and its actual actions in doing so, constitute a breach of the covenant of good faith and fair dealing.

97.    Because a violation of Sections 3.3(b) and 8.1(c) are each a prohibited activity of the Company, the reservation language set forth in Section 3.3 does not apply, as Company is acting contrary to and outside the scope of its reserved rights. Defendant cannot reserve a right unto itself that is otherwise a prohibited activity as set forth in other express terms of the Franchise Agreement.

98.    As a result of the foregoing breaches of contract, VPMD has been damaged and will continue to suffer damages.

99.    VPMD has retained the undersigned law firm to represent it in this action and has incurred an obligation to pay said law firm a reasonable fee for its services. VPMD is entitled to an award of its reasonable attorneys' fees and costs should it be the prevailing party in this action pursuant to the terms of the Franchise Agreement.

100.    All conditions precedent to the bringing of this action have occurred or been waived.

WHEREFORE, Plaintiff, MARYLAND MEDIA SOLUTIONS LLC d/b/a VALPAK OF MARYLAND, seeks a judgment in its favor and against Defendant, VALPAK DIRECT MARKETING SYSTEMS, LLC, for all damages, pre-and post-judgment interest, and attorneys' fees and costs pursuant to Section 15.6 of the Franchise Agreement, together with all such other and further relief as the Court deems just and proper.

## COUNT III
## VIOLATION OF FLORIDA'S DECEPTIVE AND UNFAIR TRADE PRACTICES ACT
### (VPMD v. Defendant)

101.    VPMD restates and incorporates paragraphs 1-64, above, as if set forth in full herein.

102.    Section 501.204, Florida Statutes, provides that "[u]nfair methods of competition, unconscionable acts or practices, and unfair or deceptive acts or practices in the conduct of any trade or commerce are hereby declared unlawful."

103.   VPMD is a "consumer" as defined by Section 501.203(7), Florida Statutes.

104.   Company engages in "trade or commerce" as defined by Section 501.203(8), Florida Statutes.

105.   Company is a Florida-based franchisor, with its headquarters in St. Petersburg, Florida, that sells franchises that offer direct mail advertising products, including, without limitation, Valpak branded products. Company's primary business is printing, publishing and distributing cooperative direct mail advertising.

106.   "Cooperative direct mail advertising" is a method of advertising in which advertisements from multiple businesses are included in a single envelope or package for mailing, allowing the costs of the mailing to be spread among the businesses. Valpak's principal advertising medium is the "VALPAK® Envelope." VALPAK® Envelopes are envelopes, identified by the "VALPAK®" trademark and/or other trademarks, service marks, trade names, and logos owned by Valpak, which contain Advertising Inserts, and which are assembled, addressed, and prepared for publication and direct mailing by Valpak primarily to residential addresses.

107.   The VALPAK® System, including its digital platform, national website, and marketing infrastructure, is owned, operated, and maintained by Valpak in Florida and supports Valpak franchisees nationwide.

108.   Valpak allowed Clipp, a direct competitor of VPMD, access to the VALPAK® System, applications containing information of Franchisees from within the VALPAK System, and use of Valpak's website and logo from within Florida. The VALPAK® System and brand assets are controlled and operated by Valpak in Florida.

109.   Company egregiously and unfairly permitted Clipp to make unrestricted use of the VALPAK® System, enabling Clipp to market and sell its competing products within VPMD's exclusive territory and to actively solicit VPMD's existing and prospective customers.

110.   By providing Clipp with full access to the VALPAK® System and marketing platform, Valpak knowingly facilitated Clipp's ability to use Valpak's brand and systems to compete directly against VPMD, in violation of VPMD's exclusive Territory rights.

111.   In doing so, Valpak also exposed VPMD's Confidential and Financial Information, contained within the VALPAK® System, to VPMD's competitor, Clipp.

112.     Valpak's actions have enabled and encouraged unfair methods of competition, including allowing Clipp to misuse and leverage VPMD's Confidential and Financial Information to divert business and undermine VPMD's operations within its exclusive Territory.

113.     By way of example, the Company has allowed Clipp to directly target and market within VPMD's exclusive Territory, as evidenced by the emails attached as Composite Exhibit C.

114.     VPMD has suffered actual damages as a direct and proximate result of Valpak's violations of FDUTPA, including lost revenue, harm to customer relationships, loss of customers, and dilution of its exclusive Territory rights and the Valpak brand.

115.     VPMD has retained the undersigned law firm to represent it in this matter and agreed to pay the undersigned firm a reasonable fee for its services. VPMD is entitled to recover its attorneys' fees and costs pursuant to Section 501.2105, Florida Statutes.

116.     All conditions precedent to the bringing of this action have occurred or been waived.

WHEREFORE, Plaintiff, MARYLAND MEDIA SOLUTIONS LLC d/b/a VALPAK OF MARYLAND, seeks a judgment in its favor and against Defendant, VALPAK DIRECT MARKETING SYSTEMS, LLC, for all damages, as provided

law, including lost revenue, harm to customer relationships, loss of customers, and

dilution of its exclusive Territory rights and the Valpak brand; attorneys' fees and

costs pursuant to Section 501.2105, Florida Statutes; and all such other and further

relief as the Court deems just and proper.

DATED March 3, 2026.

**WOODS,  WEIDENMILLER,  MICHETTI
& RUDNICK, LLP**

By: */s/ Jessica F. Tolin*
Jessica F. Tolin
Florida Bar No. 124266
John "Jack" A. Campbell
Florida Bar No. 1049617
9045 Strada Stell Court, Suite 400
Naples, FL 34109
(239) 325-4070 – Telephone
(239) 325-4080 – Facsimile
jtolin@lawfirmnaples.com
jcampbell@lawfirmnaples.com
mdipalma@lawfirmnaples.com
service@lawfirmnaples.com
*Attorneys for VPMD*