UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
TAMPA DIVISION

MARYLAND MEDIA SOLUTIONS LLC,

     Plaintiff,

v.                                Case No. 8:26-cv-574-VMC-SPF

VALPAK DIRECT MARKETING
SYSTEMS, LLC,

     Defendant.

_____/

## ORDER

This matter comes before the Court upon consideration of Defendant Valpak Direct Marketing Systems, LLC's Motion to Dismiss Second Amended Complaint (Doc. # 25), filed on April 23, 2026. Plaintiff Maryland Media Solutions LLC responded on May 14, 2026. (Doc. # 31). For the reasons set forth below, the Motion is granted in part and denied in part.

## I.   Background

Valpak Direct Marketing Systems, LLC ("Valpak") is a franchisor offering "cooperative direct mail advertising franchises." (Doc. # 24 at 3-4). Valpak's principal advertising medium is the "VALPAK® Envelope," an envelope containing advertising material that Valpak directly mails to consumers. (Id. at 4). Maryland Media Solutions LLC ("VPMD")

1

is one of Valpak's franchisees. (Id. at 7). Valpak and VPMD entered into a renewed Franchise Agreement on January 30, 2015. (Id.). Section 3.1 of the agreement confers certain "right[s], license[s] and obligation[s]" upon VPMD, including the right:

> (a) to sell, and place orders for distribution of advertising, Advertising Inserts, or other products and/or services offered by COMPANY, to be placed in VALPAK® Envelopes to be distributed within the Territory, to: (i) any Advertiser which maintains a physical place of business within the Territory; or (ii) a Purchasing Representative with an office located within FRANCHISEE'S Territory;

> (b) to sell Electronic Advertising to: (i) any Advertiser which maintains a physical place of business within the Territory; or (ii) a Purchasing Representative with an office located within the Territory;

> (c) to sell, and place orders for distribution of advertising, or other products offered by COMPANY, or Advertising Inserts to be placed in VALPAK® Envelopes or in the form of Electronic Advertising to be distributed outside of the Territory as Intermarket Advertising so long as: (i) the Advertiser from which the FRANCHISEE is soliciting business maintains a Purchasing Representative with an office located within the FRANCHISEE's Territory; or (ii) FRANCHISEE has first obtained written consent from the FRANCHISEE in whose territory the Purchasing Representative is located, or from COMPANY if the Purchasing Representative is located in an area that has not been granted to another FRANCHISEE; and

> (d) to use the Marks in connection with the foregoing activities in accordance with the VALPAK® System.

2

(Doc. # 24-1 at 6). Additionally, the Franchise Agreement provides a system for new products or services that can be used or developed in Section 3.6. (Id. at 8-9). The agreement allows Valpak to occasionally offer VPMD "the right to promote, market, sell and distribute other products and services" as well as specify the terms and conditions of VPMD's participation. (Id. at 8). Valpak may also "develop new products and services which may be available to [VPMD] and become part of the Franchised Business." (Id.).

Section 3.3 of the Franchise Agreement enumerates various rights reserved by Valpak, including the right to:

> engage in any activity: (i) that the COMPANY is not otherwise expressly prohibited from engaging in by the terms and conditions of this Agreement or the Intermarket Sales Policy; and/or (ii) that is not exclusively granted to FRANCHISEE pursuant to Sections 3.1, 3.2 and 3.6 of this Agreement (anything not expressly granted by COMPANY to FRANCHISEE is reserved by COMPANY); and/or (iii) that has been offered to FRANCHISEE on terms and conditions generally available to other Franchisees but for which FRANCHISEE has chosen not to participate on such terms.

(Id.).

In the fall of 2023, AmatoMartin, a privately held investment company, purchased Valpak through subsidiary organizations. (Doc. # 24 at 13). One of these subsidiaries

3

is "Clipp," which is also a direct mail advertising company. (Id.).

VPMD initiated this action against Valpak in March 2026. (Doc. # 1). It filed its Second Amended Complaint on April 8, 2026, asserting a claim for breach of contract (Count I) and a claim for violation of Florida's Deceptive and Unfair Trade Practices Act ("FDUTPA") (Count II). (Doc. # 24 at 24, 29, 32). VPMD alleges that Valpak breached certain sections of the agreement by allowing Clipp to compete with VPMD in its territory. (Id. at 25-26). By "permitting Clipp to use Franchisee Confidential Information . . . to its competitive advantage," VPMD alleges that Valpak has caused a "detriment" to VPMD. (Id. at 25). Moreover, VPMD contends that Valpak has violated FDUTPA because Valpak "enabled and encouraged unfair methods of competition." (Id. at 31). VPMD alleges that Valpak allowed Clipp "to divert business and undermine VPMD's operations" by providing Clipp with information and access to its system. (Id. at 32). VPMD further alleges that Valpak's actions have created customer confusion, evidenced by customers' complaints to VPMD of double billing. (Id. at 20).

Valpak moves to dismiss, and VPMD has responded. (Doc. ## 25, 31). The Motion is ripe for review.

4

## II.   __Legal Standard__

On a motion to dismiss pursuant to Rule 12(b)(6), this Court accepts as true all the allegations in the complaint and construes them in the light most favorable to the plaintiff. Jackson v. BellSouth Telecomms., 372 F.3d 1250, 1262 (11th Cir. 2004). Further, the Court favors the plaintiff with all reasonable inferences from the allegations in the complaint. Stephens v. Dep't of Health & Hum. Servs., 901 F.2d 1571, 1573 (11th Cir. 1990). But,

> [w]hile a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, a plaintiff's obligation to provide the grounds of his entitlement to relief requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do. Factual allegations must be enough to raise a right to relief above the speculative level.

Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (internal citations omitted). Courts are not "bound to accept as true a legal conclusion couched as a factual allegation." Papasan v. Allain, 478 U.S. 265, 286 (1986). The Court must limit its consideration to "well-pleaded factual allegations, documents central to or referenced in the complaint, and matters judicially noticed." La Grasta v. First Union Sec., Inc., 358 F.3d 840, 845 (11th Cir. 2004).

III. **Analysis**

Valpak seeks to partially dismiss Count I, the breach-of-contract claim, insofar as it relies on Valpak's alleged breach of Sections 3.1 and 3.6 of the Franchise Agreement, as well as the corresponding implied covenant of good faith and fair dealing. (Doc. # 25 at 3). Valpak also seeks to dismiss Count II, the FDUTPA claim, in its entirety. (Id.). The Court addresses each count in turn.

A.    **Count I**

1.    **Breach of Sections 3.1 and 3.6**

VPMD and Valpak argue for differing interpretations of the Franchise Agreement's express terms, specifically Sections 3.1, 3.6, and 3.3. (Doc. # 31 at 4-12; Doc. # 25 at 2, 7). Under Valpak's interpretation of the Franchise Agreement, VPMD has failed to plausibly allege violations of Sections 3.1 and 3.6 as Valpak's conduct was permitted by Section 3.3. (Doc. # 25 at 2, 7-13). In contrast, under VPMD's interpretation of the Franchise Agreement, it has plausibly pled that Valpak violated Sections 3.1 and 3.6 and that Section 3.3 "does not shield or permit Valpak's breaches of the Franchise Agreement." (Doc. # 31 at 4-12).

Specifically, VPMD argues that Section 3.1 grants it the exclusive right to operate and sell other products offered by

6

Valpak within VPMD's defined territory. (Doc. # 31 at 5-7). VPMD further argues that if Section 3.1 is ambiguous, the Franchise Disclosure Document can clarify the parties' intent. (Id. at 7). Valpak conversely argues that Section 3.1 does not include any such exclusivity provision, and that "Section 3.1's plain meaning is readily apparent." (Doc. # 25 at 9-10). Additionally, VPMD argues that Section 3.6 expressly requires VPMD's consent to introduce new products within its territory. (Doc. # 31 at 8-9). Valpak argues that Section 3.6 does not grant VPMD a right of first refusal, and that the Section's language demonstrates that the offering of new products is discretionary. (Doc. # 25 at 10-12). Finally, Valpak argues that Section 3.3 expressly reserves the rights that the agreement does not expressly prohibit. (Id. at 12). These arguments are all based on the interpretation of the Franchise Agreement's language.

"The Court will not resolve the parties' disagreement over the correct interpretation of the contract at the motion to dismiss stage." Antao Props. LLC v. First Am. Title Ins. Co., No. 8:19-cv-3058-VMC-AAS, 2020 WL 1492735, at *4 (M.D. Fla. Mar. 27, 2020). Indeed, "the Court 'may not engage in contract interpretation at the motion to dismiss stage, as these arguments are more appropriate for summary judgment.'"

7

Geter v. Galardi S. Enters., Inc., 43 F. Supp. 3d 1322, 1328 (S.D. Fla. 2014) (quoting McKissack v. Swire Pac. Holdings, Inc., No. 09-22086-CIV, 2011 WL 1233370, at *3 (S.D. Fla. Mar. 31, 2011)). Even if the meanings of Sections 3.1, 3.6, and 3.3 are clear and unambiguous, "[i]nterpretation of a clear and unambiguous contractual provision is a question of law properly decided on summary judgment." Ben-Yishay v. Mastercraft Dev., LLC, 553 F. Supp. 2d 1360, 1373 (S.D. Fla. 2008). And, if Sections 3.1, 3.6, and 3.3 are ambiguous, interpretation of the meanings would require reference to extrinsic evidence — again, a summary judgment matter. See BioHealth Med. Lab'y, Inc. v. Cigna Health & Life Ins. Co., 706 F. App'x 521, 524 (11th Cir. 2017) ("Should a contractual term be ambiguous — that is, reasonably susceptible to more than one meaning — then a reviewing court can consider extrinsic evidence to resolve the ambiguity."); Whitney Nat'l Bank v. SDC Cmtys., Inc., No. 8:09-cv-1788-EAK-TBM, 2010 WL 1270266, at *5 (M.D. Fla. Apr. 1, 2010) ("[A]t the motion to dismiss stage, it is inappropriate to decide whether language in a contract is ambiguous and then make determinations based on what one party believes the language of the contract to say.").

8

To address whether Valpak has breached Sections 3.1 or 3.6 of the Franchise Agreement or whether Section 3.3 permits Valpak's behavior, this Court would need to engage in contract interpretation. Specifically, this Court would need to analyze: 1) whether Section 3.1 expressly confers exclusivity within VPMD's territory, 2) whether the plain language of Section 3.6 requires VPMD's consent to offer new products, and 3) whether Section 3.3 expressly reserves Valpak certain rights permitting its behavior. Such analysis is better reserved for the summary judgment stage of the proceedings. Thus, the Court will not dismiss the breach-of-contract claim based on this argument.

### 2.   **Breach of the Implied Covenant of Good Faith and Fair Dealing**

Likewise, the Court denies the Motion as to the implied covenant of good faith and fair dealing component of this claim. Because the Court will not interpret the Franchise Agreement, Valpak's argument that "VPMD cannot establish a breach of any express contractual term" fails at this stage of the case. (Doc. # 25 at 16); see Resnick v. AvMed, Inc., 693 F.3d 1317, 1329 (11th Cir. 2012) ("The duty of good faith must relate to the performance of an express term of the contract and is not an abstract and independent term of a

contract which may be asserted as a source of breach when all other terms have been performed pursuant to the contract requirements." (citation and internal quotation marks omitted)). Additionally, the Court is not persuaded that the breach-of-the-implied-covenant allegations are duplicative of the breach-of-contract claim. See Shibata v. Lim, 133 F. Supp. 2d 1311, 1319 (M.D. Fla. 2000) ("[A] breach of the implied duty may be dismissed as redundant where the conduct allegedly violating the implied covenant is duplicative of the companion cause of action alleging breach of contract."). As VPMD argues, these allegations plausibly go beyond the express breach-of-contract allegations by addressing Valpak's alleged "bad-faith exercise of purported discretionary authority" under the Franchise Agreement. (Doc. # 31 at 14).

The Motion is denied as to Count I. Valpak may raise these arguments again at the summary judgment stage.

## B.    Count II

In Count II, VPMD alleges that Valpak has violated FDUTPA. To establish a cause of action under FDUTPA, a plaintiff must sufficiently allege three elements: "(1) a deceptive act or unfair practice; (2) causation; and (3) actual damages." Kertesz v. Net Transactions, Ltd., 635 F. Supp. 2d 1339, 1348 (S.D. Fla. 2009) (quoting City First

10

Mortg. Corp. v. Barton, 988 So. 2d 82, 86 (Fla. 4th DCA 2008)). "A deceptive practice is one that is likely to mislead consumers, and an unfair practice is one that 'offends established public policy' or is 'immoral, unethical, oppressive, unscrupulous or substantially injurious to consumers.'" Bookworld Trade, Inc. v. Daughters of St. Paul, Inc., 532 F. Supp. 2d 1350, 1364 (M.D. Fla. 2007) (quoting Rollins, Inc. v. Butland, 951 So. 2d 860, 869 (Fla. 2d DCA 2006)).

Valpak argues that VPMD failed to adequately plead consumer harm, sought damages that are not recoverable, and that this claim is derivative of the breach-of-contract claim. (Doc. # 25 at 17-22). The Motion is granted, but VPMD may amend this claim.

### 1.   Consumer Injury

First, Valpak argues that VPMD has failed to allege any injury to consumers. "While an entity does not have to be a consumer to bring a FDUTPA claim, it still must prove the elements of the claim, including an injury to a consumer." Stewart Agency, Inc. v. Arrigo Enters., Inc., 266 So. 3d 207, 212 (Fla. 4th DCA 2019).

In response, VPMD alleges that as a franchisee business, it "falls squarely within FDUTPA's statutory definition of a

'consumer.'" (Doc. # 31 at 16). And VPMD points to the allegations of injury to itself as establishing the necessary consumer injury. (Id.). The Court disagrees with VPMD.

True, the statutory definition of a "consumer" under FDUTPA includes "businesses" and "any commercial entity." See Fla. Stat. § 501.203(7) ("'Consumer' means an individual; child, by and through its parent or legal guardian; business; firm; association; joint venture; partnership; estate; trust; business trust; syndicate; fiduciary; corporation; any commercial entity, however denominated; or any other group or combination."). But the fact that a business can be a consumer does not mean that VPMD plausibly is a consumer of Valpak's goods or services. A "consumer" is a "'purchaser' of goods or services." Shibata, 133 F. Supp. 2d at 1317. There are no plausible allegations that VPMD is a consumer in relation to Valpak, such as being a Valpak customer. Rather, VPMD merely pleads that it is a franchisee of Valpak. See Midway Labs USA, LLC v. S. Serv. Trading, S.A., No. 19-24857-CIV, 2020 WL 2494608, at * 4 (S.D. Fla. May 14, 2020) ("Exicon does not allege in its Counterclaim that it engaged in the purchase of Midway's goods. Rather, Exicon explains that its 'responsibilities were to be largely logistical' for the distribution of the products to customers in Brazil to whom

12

Midway was to have already arranged sales. . . . Exicon does not explain how its 'logistical' role in distributing Midway products made it a 'consumer' for purposes of FDUTPA or satisfies the consumer injury requirement."). This is insufficient to plead that VPMD is a consumer who was harmed.

Notably, however, the Second Amended Complaint contains a fleeting reference to harm to actual consumers — customers of Valpak and VPMD. The Second Amended Complaint alleges that "[c]ustomers are complaining to VPMD that they are being double billed" because of the alleged unfair business practice. (Doc. # 24 at 20). This vague allusion on its own is insufficient to satisfy this element of the FDUTPA claim. Thus, dismissal of the FDUTPA claim is necessary.

Nevertheless, the reference to "double bill[ing]" customers suggests that VPMD may be able to plausibly plead consumer injury in a third amended complaint. (Id.) Federal Rule of Civil Procedure 15(a) provides that leave to amend should be freely given "when justice so requires." Fed. R. Civ. P. 15(a)(2). Specifically, "[i]f the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits." Foman v. Davis, 371 U.S. 178, 182 (1962). Thus, VPMD may amend this claim.

13

## 2.    <u>Actual Damages</u>

VPMD alleges that it "has suffered actual damages as a direct and proximate result of Valpak's violations of FDUTPA, being the diminution in value of the business." (Doc. # 24 at 32). In its Motion, Valpak contends that VPMD's alleged damages are not recoverable under FDUTPA because "the diminution in value of the business" is a consequential damage. (Doc. # 25 at 21) (quoting Doc. # 24 at 32). Under FDUTPA, actual damages are recoverable but consequential damages are not. <u>Diamond Resorts Int'l, Inc. v. Aaronson</u>, 371 F. Supp. 3d 1088, 1115 (M.D. Fla. 2019).

Importantly, VPMD states in its response that it "would agree to the striking of the language 'being the diminution in value of the business'" in its allegations of actual damages. (Doc. # 31 at 17) (quoting Doc. # 24 at 32). Moving forward, VPMD intends to limit its damages claim "to actual damages recoverable under FDUTPA, inclusive of, but not limited to, past, lost profits actually suffered." (<u>Id.</u> at 18). If given leave to amend, VPMD would "more specifically identify VPMD's claim for past lost profits as part of its actual damages." (<u>Id.</u>).

The Court agrees that VPMD should be given leave to amend the damages aspect of its FDUTPA claim. VPMD should perform

14

any necessary research and make any desired changes to its damages allegations in the third amended complaint.

### 3. Derivative of Count I

Finally, Valpak contends that VPMD's FDUTPA claim is derivative of Count I and, thus, "fails because Valpak did not breach the Franchise Agreement." (Doc. # 25 at 21).

Because the Court is declining to dismiss Count I, Valpak's argument fails at this stage of the proceedings. However, Valpak may raise this argument again at the summary judgment stage.

Accordingly, it is now

**ORDERED, ADJUDGED,** and **DECREED:**

(1)  Defendant Valpak Direct Marketing Systems, LLC's Motion to Dismiss Second Amended Complaint (Doc. # 25) is **GRANTED** in part and **DENIED** in part.

(2)  Count II is dismissed with leave to amend.

(3)  If it wishes to amend, Plaintiff Maryland Media Solutions LLC must file its third amended complaint within 14 days from the date of this Order.

**DONE** and **ORDERED** in Chambers in Tampa, Florida, this 10th day of June, 2026.

VIRGINIA M. HERNANDEZ COVINGTON
UNITED STATES DISTRICT JUDGE

15